868 F.2d 650
 SOUTH CAROLINA PIPELINE CORPORATION, Petitioner,
v.
FEDERAL ENERGY REGULATORY COMMISSION, Respondent,
Grace Petroleum Corporation, Pursue Energy Corporation,
Atlanta Gas Light Company, Alabama Gas Corporation, The
Georgia Industrial Group and USX Corporation, USS Division,
Southern Natural Gas Company, 3300 Corporation, Snyder 3300
Limited Partnership, Public Service Commission of South
Carolina, Intervenors.
 Nos. 88-3426 and 88-3569.
 United States Court of Appeals,
Third Circuit.
 Argued Jan. 9, 1989.
Decided March 1, 1989.
 
 Stanley M. Morley (argued), Joel F. Zipp, Paul W. Diehl, Morley, Caskin & Generally, Washington, D.C., H. Thomas Arthur, South Carolina Pipeline Corp., Columbia, S.C., for petitioner.
 Timm L. Abendroth (argued), Catherine C. Cook, Jerome M. Feit, F.E.R.C., Washington, D.C., for respondent.
 James J. Flood, Jr. (argued), Flood & Ward, Washington, D.C., for intervenor Southern Natural Gas Co.
 Jon L. Brunenkant, Grove, Jaskiewicz, Gilliam & Cobert, Washington, D.C., for intervenor Pursue Energy Corp.
 Sarena D. Burch (argued), Columbia, S.C., for intervenor, Public Service Comm'n of South Carolina.
 Before HIGGINBOTHAM, COWEN and ALDISERT, Circuit Judges.
 PER CURIAM.
 
 
 1
 We must decide whether the Federal Energy Regulatory Commission ("FERC" or "the Commission") properly dismissed a complaint filed by South Carolina Pipeline Corporation ("Carolina") that sought a reduction in the prices payable under two gas purchase contracts between Southern Natural Gas Company ("Southern") and certain producer/suppliers of natural gas. Carolina transports and sells natural gas within the state of South Carolina. The major portion of the gas sold by Carolina is purchased from, or transported by, Southern. Southern is an interstate pipeline company subject to the provisions of the Natural Gas Act, 15 U.S.C. Secs. 717-717w (NGA), and the Natural Gas Policy Act, 15 U.S.C. Secs. 3301-3432 (NGPA). This court has jurisdiction under section 717r(b) of the NGA and section 3416 of the NGPA. The petition was timely filed by Carolina for review of a final order of the Commission. We will deny the petition for review.
 
 
 2
 In its complaint before the Commission, Carolina alleged that Southern's gas purchases from producer/suppliers under certain contracts known as the "Thomasville" contracts violated sections 4 and 5 of the Natural Gas Act, 15 U.S.C. Secs. 717c, 717d, and section 601 of the Natural Gas Policy Act, 15 U.S.C. Sec. 3431. Carolina sought a reduction in the price Southern had to pay under these contracts, injunctive relief prohibiting Southern from making payments in excess of that amount while the FERC proceeding was pending, and other relief.
 
 
 3
 The Thomasville contracts were executed on December 28, 1979, and January 18, 1980. The gas purchased by Southern under these contracts is produced at extremely high temperatures under great pressure from depths of up to 20,000 feet. Because of the conditions and special requirements involved in its extraction, the gas qualifies as "high-cost natural gas," which has been deregulated under the NGPA. See 15 U.S.C. Secs. 3317(c)(1), 3331(b).
 
 
 4
 By authority granted it in the NGA and the NGPA, the Commission regulates the sale and transportation of natural gas. The Commission also regulates the rates charged by pipelines, which purchase gas from producers and resell it to distributors and other customers. Under section 4 of the NGA, all changes in rates must be approved by the Commission. 15 U.S.C. Sec. 717c(d). Rates subject to regulation are unlawful unless they are "just and reasonable." Id. Sec. 717c(a). In determining whether a pipeline's rates are "just and reasonable," the Commission uses a methodology that allows a pipeline to recover in its rates the expenses of acquiring and transporting gas--if those costs were prudently incurred--plus a reasonable return on investment. This method allows pipelines to "roll-in" the costs of high-priced gas with those of low-priced gas. Upon the filing of a proposed rate change, the Commission may, on its own initiative or following a complaint, hold a hearing to determine the lawfulness of the requested change; the burden of proving that the requested rates are just and reasonable is on the pipeline. Id. Sec. 717c(e).
 
 
 5
 Because section 4 filings can be protracted, qualified pipeline companies may adjust their rates to reflect changes in costs by submitting purchased gas adjustment (PGA) filings biannually. In exchange, the pipelines must agree to submit all costs and revenues to the Commission for a full scale section 4 review at least every three years. Rate changes ordered by the Commission pursuant to a section 4 PGA review are retroactive.
 
 
 6
 Southern's PGA filings for 1981, 1982, and 1983 were all protested by its customers, including Carolina. The customers argued that the prices paid by Southern for high-cost, deregulated gas were excessive and should not be "rolled-in" with Southern's other gas purchase costs and passed through to Southern's customers.
 
 
 7
 Subsequently, Southern entered into a settlement agreement (Stipulation) with the protesting parties, including Carolina. The protesting parties agreed to "waive, release and discharge any and all claims against Southern that may arise under the [NGPA], or the Commission's Regulations implementing the NGPA, which would deny the passthrough in Southern's jurisdictional rates of any amounts paid by Southern for the purchase of deregulated gas pursuant to the gas purchase contracts [covered by the Stipulation]." Article II of Stipulation, App. at 221. The Stipulation further provided that future challenges to passthrough of amounts paid under those contracts would be permitted under only certain circumstances, only one of which is relevant here--if a contract "has been amended after the date of this Agreement in a manner adverse to consumers' interests...." Id.
 
 
 8
 The Stipulation waiving future action, and its exception, commanded the attention of the Commission in its decision dismissing Carolina's complaint. It commands our attention here as well.
 
 
 9
 Southern and its suppliers, Grace Petroleum Corp., Pursue Energy Corp., and Snyder 3300 Corp., protested Carolina's complaint and moved to dismiss, arguing that the relief sought was precluded by the 1983 Stipulation. The Commission agreed:
 
 
 10
 South Carolina does not dispute that it was a party to the Settlement [Stipulation] nor does it deny that the Thomasville Field contracts are covered by the Settlement. Thus, as Southern Natural's answer states, South Carolina released any right to challenge passthrough of amounts paid under the Thomasville contracts and its complaint is barred by the terms of the Settlement.
 
 
 11
 FERC order of March 2, 1988, App. at 254.
 
 
 12
 In its argument before the Commission, Carolina conceded the validity of the Stipulation, but contended that its complaint was predicated on the theory that the Thomasville contracts had been amended in a manner adverse to consumers' interests, thus permitting complaints to be filed under the "amendment" exception to Article II of the Stipulation. The Commission rejected Carolina's amendment contention, stating:
 
 
 13
 South Carolina advocates an overly broad interpretation of the word 'amendment' which exceeds the meaning contemplated by the parties at the time of the Settlement. At no time since the March 1, 1983 effective date of the Settlement have any of the contracts been modified in writing. Thus, we remain unpersuaded by South Carolina's argument....
 
 
 14
 FERC Order Denying Rehearing, App. at 11.
 
 
 15
 The Commission's conclusion is not unreasonable, and is, therefore, entitled to deference. See Western Union Tel. Co. v. F.C.C., 541 F.2d 346, 351 (3d Cir.1976), cert. denied, 429 U.S. 1092, 97 S.Ct. 1104, 51 L.Ed.2d 538 (1977) (rejecting argument that deference is not due agency's construction of contract); see also National Fuel Gas Supply Corp. v. FERC, 811 F.2d 1563, 1569 (D.C.Cir.), cert. denied, --- U.S. ----, 108 S.Ct. 200, 98 L.Ed.2d 151 (1987) (court should defer to agency's construction of agreement); Manufacturer's Light & Heat Co. v. F.P.C., 374 F.2d 88, 89 (3d Cir.1967) (Commission's conclusion as to what parties contemplated in subscribing to a settlement agreement deserves deference).
 
 
 16
 Employing the appropriate standard of review, see Gulf Oil Corp. v. FERC, 706 F.2d 444, 451 (3d Cir.1983), cert. denied, 464 U.S. 1038, 104 S.Ct. 698, 79 L.Ed.2d 164 (1984), we conclude that this determination by the Commission was not an abuse of discretion, and is supported by substantial evidence. 15 U.S.C. Secs. 717r, 3416(a)(4); 5 U.S.C. Sec. 706(2)(A).
 
 
 17
 Carolina also contended that even if the stipulation does bar claims under the NGPA, it does not bar claims under the NGA. We are satisfied with the Commission's analysis rejecting this contention. See FERC Order Denying Rehearing, App. at 9, 11. We determine that here, too, there was no abuse of discretion.
 
 
 18
 We are also satisfied that, even assuming the Thomasville contracts were subject to Commission scrutiny under the NGA, section 5 does not mandate a hearing. The decision to conduct a hearing is committed to the Commission's discretion. Southern Union Gas Co. v. FERC, 840 F.2d 964, 969-70 (D.C.Cir.1988). In its Order Denying Rehearing, the Commission stated it did not believe a hearing was warranted to investigate the prudence of Southern's purchases. The Commission pointed out that the issue was raised not only in South Carolina's complaint, but by Alabama Gas in a filing following a conference held in a 1987 PGA proceeding examining Southern's purchasing practices. The Commission noted that "South Carolina has offered no new information to justify a prudence investigation at this time. South Carolina's pleading contains no evidence whatsoever respecting the matter of prudence and simply summarizes the relevant contract provisions." App. at 11.
 
 
 19
 We conclude finally that the Commission did not abuse its discretion in deciding not to incorporate into this proceeding, the record evidence from the contemporaneous NGPA proceeding and a 1986 NGA proceeding, also involving Southern.
 
 
 20
 We have carefully considered the contentions presented by the petitioner both in its brief and at oral argument and conclude that further discussion is not necessary.
 
 
 21
 The petition for review will be denied.